# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Daniel Lemon,                                            Case No. 3:18CV1029

        Plaintiff

        v.                                            **ORDER**

Norfolk Southern Railway Company,

        Defendant.

This is a wrongful termination case. Plaintiff Daniel Lemon claims that defendant Norfolk Southern Railway Company (NSR) fired him in retaliation for reporting a workplace injury in violation of the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20109(a). (*See* Doc. 1).

On December 16, 2015, Lemon hurt his neck. The parties dispute whether the injury occurred at home or at work, but, in any case, Lemon reported his neck pain to his supervisor as a workplace injury. The supervisor investigated the injury and concluded that Lemon had lied and told inconsistent stories about the injury's cause. After a disciplinary hearing, NSR fired Lemon for dishonesty.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending are the parties' counter-motions for summary judgment (Doc. 18; Doc. 19) and NSR's objections to affidavits of Fredric Schultz and Rebecca Stevenson, which I treat as a motion to strike (Doc. 24).[1]

---

[1] Also pending is Lemon's motion to supplement plaintiff's briefing regarding his opposition to defendant's motion for summary judgment, without argument, instanter. (Doc. 32). That motion seeks to supplement his brief with *Bostek v. Norfolk Southern Railway Company, et. al.*,

For the reasons that follow, I overrule NSR's objections to the affidavit evidence, grant NSR's motion for summary judgment in part and deny it in part as moot, and deny Lemon's motion for summary judgment.

## Background

Lemon worked for NSR, a subsidiary of Norfolk Southern Corporation, for fifteen years, with his latest position as a yardmaster at NSR's Toledo Terminal. (Doc. 18 at PageID #: 74).

### A. The Injury

On December 16, 2015, sometime before 9:30 a.m., Lemon injured his neck. Lemon's pain worsened throughout the day. He ended his shift early, and, that afternoon, a coworker drove him to the hospital. A doctor diagnosed him with a pinched nerve. (Doc. 18-4 at PageID #: 324-25). After his hospital visit, Lemon reported his injury to his supervisor. (Doc. 18-6 at PageID #: 486).

Lemon claims that the injury occurred while walking up some stairs at the Toledo Terminal. (Doc. 18 at PageID #: 75). NSR argues that Lemon's statements to others contradict that contention, and show that the injury happened at home. (Doc. 19-1 at PageID #: 623-624).

In a joint filing (Doc. 31), the parties set forth Lemon's various December 16, 2015 statements about his injury:

- In a statement, a coworker indicated that, between 9:30 and 10:00 a.m., Lemon asked him "for an Advil because he turned his head the wrong way . . . and tweaked his neck looking out the window." (Doc. 18-6 at PageID #: 487). Lemon initially disputed the coworker's statement but later explained that he could not recall this discussion. (Doc. 31 at PageID #: 1768) (citing Doc. 18-6 at PageID #: 487).

- At 1:45 p.m., Lemon told another coworker that he "tweaked his neck at home walking down some stairs." (Doc. 18-2 at PageID #: 92).

---

3:16CV02416 (N.D. Ohio 2016) (Helmick, J.). Because no prejudice would result, I grant the motion.

2

- In the afternoon, during his hospital visit, Lemon told the emergency room physician his injury happened at home. (Doc. 18-5 at PageID #: 477-478).

- While still at the hospital (though it is unclear exactly when), Lemon changed his story. (Doc. 18-5 at PageID #: 477-478). Lemon's mother, a hospital compliance officer, visited him, and, after Lemon told her that he hurt himself at work, encouraged him to be truthful. (*Id.*). Lemon then told the physician that his injury occurred at work and explained that he was afraid to say so because he thought NSR might fire him. (*Id.*). Both Lemon's mother and the physician assured him that NSR could not fire him for reporting a workplace injury. (*Id.*). The notes from his visit indicate that he hurt himself while walking down stairs at work. (Doc. 18-4 at PageID #: 325) (Lemon deposition, medical records as exhibit 3).[2]

- At 5:07 p.m., Lemon texted a coworker saying "I'm sitting in the ER with some serious neck pains, tweaked it at home this morning. Pain was excruciating by the end of the day." (Doc. 19-1 at PageID #: 620; Doc. 19-11).

- At about 6:45 p.m., Lemon reported the injury to his supervisor, John Turpie, and told him that he "slipped on the stairs at work today and tweaked his neck." When Turpie asked if he had told anyone else about the injury, Lemon said he had not. (Doc. 18-6 at PageID #: 486).

**B. The Investigation**

After Lemon reported his injury, Turpie began an investigation. (Doc. 19-9 at PageID #: 850). During the investigation, Turpie learned that Lemon had told co-workers about the injury and that he had told at least some of them that he had hurt himself at home. (*Id.* at PageID #: 850-51).

On December 17, 2015, Lemon filed his official injury report. The report stated that the injury occurred at work. (Doc. 19-10 at PageID #: 858-59). That same day, Turpie pulled Lemon out of service. (Doc. 18-2 at PageID #: 92).

---

[2] There is further conflict between the narratives that describe Lemon's neck pain as an on-the-job injury. His medical records state that he "was walking downstairs [at] work, missed a step felt a jolt throughout his body particularly in his neck[.]" (Doc. 18-4 at PageID #: 325). But at deposition, Lemon testified that "[he] was walking up the steps, and [his] foot missed the stair tread and kind of slammed down on the next one and [he] felt a little jar in [his] neck." (*Id.* at PageID #: 118).

Four days later, on December 21, 2015, Turpie notified Lemon that NSR was charging him with the disciplinary violation of making false and/or conflicting statements. (Doc. 19-9 at PageID #: 853).

NSR held a hearing on January 13, 2016. (Doc. 19-12 at PageID #: 925, 928, 935).[3] One week later, on January 20, 2016, NSR terminated Lemon. (Doc. 19-7 at PageID #: 732).

### C. Procedural History

On April 8, 2016, Lemon filed an FRSA retaliation complaint against NSR with the Occupational Safety and Health Administration (OSHA). (Doc. 19-1 at PageID #: 618). OSHA dismissed his complaint, and Lemon appealed for a hearing before an administrative law judge (ALJ). (Doc. 19-14 at PageID #: 972-73). Before the ALJ could rule on NSR's motion for summary judgment, Lemon filed his complaint in this court on May 3, 2018. (Doc. 1; Doc. 19-17 at PageID #: 1087).

---

[3] Lemon argues that I cannot consider statements made during his termination hearing. (Doc. 25 at PageID #: 1529-30) I disagree. The hearing records are relevant to show NSR's decision-making process on what sanction, if any, to take against Lemon.

The cases Lemon cites do not convince me otherwise. (*See* Doc. 25 at PageID #: 1529-30 (citing *Grimes v. BNSF Ry. Co.*, 746 F.3d 184 (5th Cir. 2014); *Knisely v. Norfolk Southern Railway*, Lucas C.P. No. CI-00-01123 (Lucas County C.P. 2005)).

In *Grimes*, *supra*, 746 F.3d at 189, the Fifth Circuit held that railroad arbitration proceedings have no preclusive effect if those proceedings lack certain procedural protections. Similarly, in *Knisely*, *supra*, at 1-2, an Ohio trial court held that the employer could not introduce statements made at a disciplinary hearing against the plaintiff at trial.

Here, however, NSR does not introduce records from Lemon's disciplinary hearing for preclusive purposes. And I refer to such records not to evaluate Lemon's claim but for background information only.

**Standard of Review**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if the moving party demonstrates that there is no genuine dispute of material fact and that judgment must follow as a matter of law. Further, I must view all evidence in the light most favorable to the nonmoving party and draw any justifiable inferences in that party's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, (1962). I am not, however, bound to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (internal citations omitted).

A dispute over a fact is genuine when a reasonable jury could decide the matter and enter a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material if its resolution could affect the outcome of the case. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). For the non-moving party to succeed, doubts regarding the materials facts must rise above the "metaphysical" level. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**Discussion**

**A. NSR's Objections to Affidavit Evidence**

NSR objects to the affidavits of Fredric Schultz (Doc. 18-1) and Lemon's mother, Rebecca Stevenson (Doc. 18-5). (Doc. 24). I treat its objections as a motion to strike.

Under Federal Rule of Civil Procedure 56(c)(4), a court, on summary judgment, may consider affidavits if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

NSR argues that I may not consider Schultz's and Stevenson's affidavits because they are irrelevant and inadmissible hearsay and that Schultz's affidavit is not based on personal knowledge. (*See* Doc. 24 at PageID #: 1494) (citing Fed. R. Civ. P. 56(c)(4)).

I disagree.

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Hearsay is a declarant's out-of-court statement offered "to prove the truth of the matter asserted in the statement." A hearsay statement is generally inadmissible. Fed. R. Evid. 802.

### 1. Schultz's Affidavit

Schultz is a longtime former NSR employee who worked at NSR's Toledo Terminal. (Doc. 18-1 at PageID #: 90). Lemon introduces his affidavit to demonstrate a so-called "culture of intimidation, retaliation and cover-up with respect to reported injuries[,]" at the Toledo Terminal. (Doc. 18-1 at PageID #: 91). This culture, Lemon claims, prompted his inconsistent statements about where he hurt himself.

Schultz avers, *inter alia*, that: 1) NSR was less concerned about the number of actual injuries compared to injury reports; 2) NSR tied year-end bonuses for some management positions, at least in part, to the number of FRSA injuries reported in a given year (the fewer, the greater the bonus); and 3) management at the Toledo Terminal created a "significant . . . culture of intimidation, retaliation and cover-up with respect to reported injuries[;]" and fostered that

culture, in part, by making baseless charges against employees for making "false and conflicting statements." (*Id.* at 90-91).

While Schultz may not have personal knowledge of Lemon's injury, he has personal knowledge about the alleged culture of intimidation that Lemon claims prompted his inconsistencies.

After having worked at the Toledo Terminal for thirty-five years, Schultz had retired only one month before Lemon made his injury report, In addition, Schultz, had dealt extensively with management, with regard to workplace injuries and their aftermath. Because Schultz's affidavit goes to Lemon's explanations for his inconsistent statements, the affidavit is likewise relevant.

Moreover, NSR's hearsay argument is misplaced. Insofar as Schultz's affidavit describes NSR management's statements about workplace injuries, those statements are admissible as statements offered against a party-opponent made in the course of an employment relationship. Fed. R. Evid. 801(d)(2)(D).

I therefore will not exclude Schultz's affidavit.

### 2. Stevenson's Affidavit

Stevenson's affidavit captures her discussion with Lemon during the hospital visit, wherein she insisted that he truthfully report his injury's cause. (Doc. 18-5 at PageID #: 477). (*Id.* at PageID #: 478).

As with Schultz's affidavit, Stevenson's affidavit is relevant to explain Lemon's inconsistent reporting due to his alleged fear that NSR would fire him.

Lemon's statements, as contained in Stevenson's affidavit, are admissible under Federal Rule of Evidence 803(3). That rule allows otherwise inadmissible hearsay if the statements describe "the declarant's then-existing state of mind . . . or emotional, sensory, or physical

condition[.]" Lemon offers these statements to show his emotional state, that is, his alleged fear that NSR would fire or otherwise retaliate against him for reporting a workplace injury.

Accordingly, I overrule NSR's motion to strike Stevenson's affidavit.

### B. NSR is Entitled to Summary Judgment

Both parties seek summary judgment on Lemon's FRSA retaliation claim.

The FRSA prohibits retaliation by railroads against employees who engage in good faith in protected activities, including "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal injury." 49 U.S.C. § 20109(a)(4).

### 1. Analytical Framework

The analysis of retaliation claims follows a two-part, burden-shifting framework. *Consol. Rail Corp. v. U.S. Dep't of Labor*, 567 F. App'x 334, 337 (6th Cir. 2014); 49 U.S.C. § 20109(d)(2)(A).

First, the employee must make a *prima facie* showing that: "(1) he engaged in protected activity; (2) [his] employer knew that he engaged in protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action." *Consol. Rail Corp.*, supra, 567 F. App'x at 337 (citing *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013)); *see also* 49 U.S.C. § 42121(b)(2)(B)(i).

If the employee meets those four requirements, the burden shifts to the employer to "demonstrate[] by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that [protected] behavior." 49 U.S.C. § 42121(B)(2)(B)(ii); *see also Consol. Rail Corp.*, supra, 567 F. App'x at 337.

8

NSR argues that Lemon cannot meet his *prima facie* burden, and, even if he can, it has produced evidence sufficient to show that it would have fired him notwithstanding his injury report. (Doc. 19-1 at PageID #: 616-17). Lemon disagrees. (Doc. 25 at PageID #: 1526).

### 2. Lemon Cannot Establish a *Prima Facie* Case

The parties dispute only two of the four *prima facie* elements, namely, whether: 1) Lemon engaged in a protected activity; and 2) the protected activity was a contributing factor to the unfavorable personnel action. (Doc. 25 at PageID #: 1533; Doc. 27 at PageID #: 1726).

In order to qualify as a protected activity, a plaintiff must have acted in good faith. 49 U.S.C. § 20109(a).

NSR argues that Lemon's report was not a protected activity because he did not make it in good faith. (Doc. 19-1 at PageID #: 616). I agree.

### a. Test for Good Faith Under FRSA

Initially, the parties dispute how a FRSA plaintiff can demonstrate good faith.

Lemon asks me to adopt the test used in *Ray v. Union Pacific R.R. Co.*, 971 F.Supp.2d 869, 883 (S.D. Iowa 2013). (Doc. 25 at PageID #: 1527). In that case, the court held that plaintiff acted in good faith, despite his changing stories about "*when* and *how* he realized his injury was caused by his employment[,]" because "*at the time he reported his injury to* Defendant, Plaintiff genuinely believed the injury he was reporting was work-related." *Ray*, *supra*, 971 F.Supp.2d at 883-84 (emphasis in original).

NSR asks me to apply a more restrictive, two-part test. (Doc. 27 at 1725).

Several district courts have disagreed with *Ray*'s approach and required plaintiffs to show both that: 1) "the employee [had] a good faith belief that his injury is work-related" and 2) "the

9

employee . . . actually made the injury report itself in good faith." [4] *Murphy v. Norfolk S. Ry. Co.*, 2015 WL 914922, at *5 n.3 (S.D. Ohio) (citing *Good Faith*, BLACK'S LAW DICTIONARY (6th ed. 1990)); *accord Bostek*, *supra*, 2019 WL 2774147 at *3; *Smith v. BNSF Ry. Co.*, 2019 WL 3230975, at *4 (D. Colo.); *Armstrong v. BNSF Ry. Co.*, 128 F. Supp. 3d 1079, 1089 (N.D. Ill. 2015); *see also Miller v. CSX Transport., Inc.*, 2015 WL 5016507, at *6-7 (S.D. Ohio).[5] The second part of this test aims to prevent employees who have "some ulterior motive in reporting an injury," or who are "actually attempt[ing] to avoid reporting an injury" from abusing the FRSA's protections. *Murphy*, *supra*, 2015 WL 914922 at *5 n.3.

I agree with these courts "that FRSA incorporates both elements[,]" *Murphy*, *supra*, 2015 WL 914922 at *5 n.3, and apply the two-part test. In light of the series on inconsistent statements that Lemon made shortly after he injured himself and his affirmative misrepresentation to his supervisor that he had told no one else about the injury, when, in fact, he had told several people, no rational trier of fact could find that he acted in good faith when he reported he'd been injured.

### b. Lemon Cannot Meet the Second Element of the Good-Faith Test

Although, viewing the evidence in the light most favorable to Lemon, there is a genuine issue of material fact as to whether he believed in good faith that his injury was work related, the uncontested record shows he did not report his injury in good faith.

Lemon identifies evidence in the record showing that he believed in good faith that his injury was work related. Indeed, he told medical personnel – after assurance that he could not

---

[4] The Black's Law Dictionary definition of good faith the court used in *Murphy*, *supra*, 2015 WL 914922 at *5, n.3, remains current. *See Good Faith*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[5] Still other courts employ a subjective-objective test, which requires: 1) a subject belief that the injury was work-related; and 2) that such a belief was objectively reasonable. *See, e.g.*, *Armstrong, supra*, 128 F. Supp. 3d at 1089.

10

lose his job for reporting a workplace injury – that he hurt himself at work. (Doc. 18-5 at PageID #: 477-78). The record contains treatment notes to that effect. (Doc. 18-4 at PageID #: 325). Moreover, Lemon immediately informed his supervisor about his alleged workplace injury on leaving the hospital. (Doc. 18-4 at PageID #: 154-155). Although other statements in the record could lead a reasonable juror to conclude that the injury occurred at home (*see, e.g.*, Doc. 19-1 at PageID #: 620; Doc. 19-11), it is not for me to weigh that evidence on summary judgment. *Anderson*, *supra*, 477 U.S. at 249.

In any event, Lemon cannot meet the second part of his burden.

Lemon must show that he made his report in good faith, that is, with "honesty of purpose, freedom from intention to defraud, and, generally speaking, . . . faithful[ness] to [his] duty or obligation." *Murphy*, *supra*, 2015 WL 914922 at *5 n.3 (citing *Good Faith*, BLACK'S LAW DICTIONARY (6th ed. 1990)).

In *Murphy*, *supra*, 2015 WL 914922 at *2, another suit against NSR, the employee reported an injury to his supervisor and asked him not to report it further. The supervisor complied. *Id.* The court held that, though the employee was disingenuous, whether he made his report in good faith was a genuine issue of material fact. This was so because his supervisor did not "display[] the firmness necessary to reject his request." *Id.* at *5.

Then, in *Bostek*, *supra*, 2019 WL 2774147 at *3, the court held that an employee's confusion about the circumstances surrounding her injury did not eviscerate good faith. In that case, the plaintiff slipped and fell down stairs at work, but her reports regarding the number of stairs she fell down and the amount (if any) of snow and ice on the stairs conflicted with witnesses' observations.

The parties argue – at length – about whether Lemon lied to his supervisor when he reported that he injured himself at work and whether he lied to his coworkers when he told them that he injured himself at home (and if he lied to his coworkers, whether that matters).

Notwithstanding that dispute, Lemon lied to his supervisor when he said that he had not talked to anyone else about his injury. (*See* Doc. 19-9 at PageID #: 850 (deposition of John Turpie)). Indeed, the record contains evidence showing that 1) Lemon's supervisor asked whether he had told others about his injury; 2) Lemon said no; and 3) Lemon had, in fact, told at least three coworkers about hurting his neck before he made his injury report. (*See* Doc. 31). Although Lemon now states that he cannot remember his supervisor asking whether he told others about the injury, he does not rebut the record evidence.

Lemon's injury report, then, was dishonest. Misdirecting a supervisor about who, if anyone, would have information about a potential workplace injury impairs the supervisor's investigation into the injury's cause. Misremembering the number of stairs one fell down simply reflects confusion on the employee's part. *See Bostek*, *supra*, 2019 WL 2774147 at *3. And asking a supervisor not to report an injury up the chain, though interference with reporting procedures, is not outright deceit. The supervisor remains free to honor or to disregard such a request. *See Murphy*, *supra*, 2015 WL 914922, at *5. But lying about potential witnesses to a supervisor threatens his or her ability to find out what happened. It is a far graver act than a mere honest misstatement or meaningless request not to inform others.[6]

---

[6] Lemon urges me to presume good faith and require NSR "to evince some plausible ulterior motive inconsistent with […] good faith[.]" (Doc. 26 at PageID #: 5). I decline this unsupported invitation. It is Lemon's burden to show good faith, not NSR's. *See, e.g.*, *Consol. Rail Corp.*, *supra*, 567 F. App'x at 337.

Accordingly, Lemon did not act in good faith, and his claim fails on the protected activity element.

**Conclusion**

Because Lemon cannot meet his burden of proving a *prima facie* case, it is not necessary for me to consider either the issue of contributing factor or the issue of punitive damages.

It is, therefore, hereby

ORDERED THAT:

1. Plaintiff Lemon's motion for summary judgment under Fed. R. Civ. P. 56 (Doc. 18) be, and the same hereby is, denied;

2. Defendant Norfolk Southern Railway Company's motion for summary judgment (Doc. 19) be, and the same hereby is granted;

3. Defendant Norfolk Southern Railway Company's objections to affidavits of Fredric Schultz and Rebecca Stevenson (Doc. 24) be, and the same hereby are, overruled; and

4. Plaintiff Lemon's motion to supplement plaintiff's briefing regarding his opposition to defendant's motion for summary judgment, without argument, instanter (Doc. 32), be, and the same hereby is, granted.

So ordered.

/s/James G. Carr
Sr. U.S. District Judge